Sue Ellen Tatter
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 W. Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL ALFRED BRIERE,<br><br>　　　　Defendant. | NO. 3:05-cr-0053-JWS<br><br>**DEFENSE SENTENCING MEMORANDUM** |

– INTRODUCTION –

The defendant, MICHAEL ALFRED BRIERE, through counsel, presents this memorandum in aid of sentencing set for June 7, 2006, at 8:00 a.m. in Anchorage. Michael Briere is a 39-year-old Native man with some college. He has been employed for most of his life. He has only one prior offense in 1989 which involved no jail time.

Federal sentencing law, at present, requires the court to consider factors described in 18 U.S.C. § 3553(a) such as the "nature and circumstances of the offense," the "history and characteristics of the defendant," the "need for the sentence imposed,"

(which includes just punishment, deterrence, public safety), rehabilitation, the kinds of sentence available, applicable guidelines, and providing restitution.

I.  **THE NATURE AND CIRCUMSTANCES OF THE OFFENSE**

In 2003, Mr. Briere was a contract computer assistant for The Music Man. This store sells and rents musical instruments. The store contracted with Mr. Briere to do network administration. He also installed a program, IC Verify, to process monthly credit card rental payments. IC Verify is a relatively simple program which uses the Internet to charge customers' credit cards. (See Exhibit A)

The Music Man permitted Mr. Briere to use his own laptop to work on the project at home. However, after he stopped working for The Music Man, Mr. Briere used the store's version of IC Verify to credit his own accounts with "refunds." The thefts occurred between July 2003 and August 2004. The stolen amounts added up to approximately $60,000. Upon arrest, Mr. Briere immediately acknowledged his misdeeds and told the FBI agent exactly what he did. He pled guilty to the charges relatively early in the court process. He has been incarcerated since January 2006.

II.  **HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

Mr. Briere's mother was a Public Health Service nurse, and traveled around the country working on Indian reservations. His father is a Native from Tanana, Alaska whom Mr. Briere has never met. Most of Mr. Briere's childhood was spent in Arizona. He attended Catholic schools and did well through high school. He attended both the

University of Arizona at Tucson and Mesa Community College, but did not earn many credits.

Mr. Briere has worked in the healthcare and nursing home fields. He also has worked in various capacities with computers. His jobs have been short-lived but he has demonstrated the capacity to find work and make money.

In 1989, when he was 21, Mr. Briere stole approximately $1,800 by forging checks from an elderly couple who employed him. He received a probationary sentence and repaid the victims. He demonstrated remorse to the court for his conduct in that case.

Although he is intelligent, competent and healthy, Mr. Briere has had periods of depression, self-doubt and marijuana dependence. He was involved in a destructive and stormy personal relationship, as reflected in paragraph 71 of the presentence report. However, he has learned from these experiences and has hopes of steady employment, restitution, and a peaceful life in the future.

### III.     THE NEED FOR THE SENTENCE IMPOSED

A.     <u>Just Punishment</u>

Under the statute, the court must impose a sentence which reflects the seriousness of the offense, promotes respect for the law and provides just punishment. These concerns militate strongly in favor of a minor additional jail sentence here. The offense, in duration, sophistication and dollar amount, is less serious than many other theft cases before this court. However, the offense had a strong impact on The Music Man and the innocent victim owner.

The major punishment here, and the deterrence to others, comes through the significant fact of a federal felony conviction. This detriment will provide a continual lesson to Mr. Briere as he struggles with the collateral consequences, such as reduced employment opportunities and computer restrictions which may accompany supervised release. If there is deterrence of others by example, the federal felony conviction, and the immediate jail imposed here after arrest, will be the main lessons to others tempted by similar opportunities.

B. <u>Rehabilitation of the Defendant</u>

Mr. Briere is an intelligent, employable man of middle years, who has spent most of his life without government involvement. This case thrust him into a jail cell and the inevitability of a life-changing conviction. His true remorse is attested to by his immediate confession to the FBI agent, including details of how the crime was committed, and his nearly immediate change of plea in this case.

He can be adequately rehabilitated by supervised release and the continued requirement of employment and restitution. Further additional jail is not necessary for him to get the point.

C. <u>Protection of the Public</u>

Small business people need protection from employees who steal. But employee theft is a timeless problem transcending government sanctions or sentencing regimens. The only total protection is life imprisonment, which would be unjust and impractical. On the other hand, several months or a year of incrementally more jail time is not likely to protect the public enough to counterbalance the need for restitution. In fact,

a lengthy term of supervised release, with a work requirement, is more likely to protect the public over time than eight or twelve months of additional jail.

## IV.  GUIDELINE COMPUTATIONS

The sentencing guidelines are a relevant factor under 18 U.S.C. § 3553(a)((4)(A)(I).  In this case, the presentence report recommends an adjusted offense level of **17** and a total offense level of **14**.  The defense believes the adjusted offense level should be **15** and the total offense level **13**.  The defense believes the upward adjustment for "sophisticated means" should not be applied.  There is no dispute about the criminal history category.

The PSR computation would give Mr. Briere a guideline exposure of **15-21** months in jail.  The defense computation yields a range of **12-18** months in jail, because the enhancement for "sophisticated means" should not apply.[1]

The computer program which Mr. Briere used to steal money is simple.  The current version, accessible on the Internet now, is more complex than the 2003 version

---

[1] The defense has several disputes with the presentence report.  Other than the enhancement for "sophisticated means," these disputes do not affect the guidelines computation.  However, these issues may be important to the Bureau of Prisons or supervision.

The defense disputes the inclusion of paragraphs 76, 76a, 77 and 82a.  These paragraphs describe other people's opinions of Mr. Briere and his lifestyle choices.  Paragraph 77 describes his mother's five-year old fears about suicide, and even continues with the FBI agent's speculations about why the mother spoke as she did.  Paragraph 82a is the writer's report of the mother's report of what a friend told her about possible sexual abuse of Mr. Briere.  This information is too speculative and prejudicial for inclusion in an important report used by courts and law enforcement.

used by The Music Man.  But either version is easy to access.  As Exhibit A indicates, entrance and operation for this program is similar to ordering from Amazon.com.  There are few fields to complete, and no special expertise is required.  There is no access code, no security, no password, no false ID or false names.  The use of this program is certainly simpler than ordering from eBay which requires a numbered account, a user name, a password and a hidden question.

      Mr. Briere did use a computer program to create a "text file" for The Music Man from the store's customer data base.  The "text file" was then imported into IC Verify so that The Music Man could use the customer data base to process its monthly rental charges with the IC Verify mechanism.  But Mr. Briere did not create a "text file" for his theft.  He just entered the amounts he sought to obtain on the "Refund" option of IC Verify.  This entering requires few pieces of information.  Page 2 of Exhibit A shows the five windows for getting a "refund."  "Refund" was the simplest way to obtain money.

      Thus Mr. Briere was operating like a secretary or bookkeeper who enters "petty cash" on a withdrawal and takes $1,213 for his own use.  He did this over time, and used random amounts, just like a normal embezzler.  This conduct was wrong, and it was an abuse of trust. However, it was not "sophisticated means" unless any use of a computer program is "sophisticated."  Since grade school students are routinely using Word, Excel, Lexis and search engines, and since high school students routinely use digital photo programs, music club memberships, on-line banking, chat rooms and virus protection software, it is archaic to assign a "sophisticated means" enhancement to this simple program.

The "abuse of trust" enhancement more particularly describes the wrongdoing here. Mr. Briere was a contractor who stole from a company that trusted him. Application of another enhancement is not warranted, particularly in light of the simplicity of the program and the lack of security.[2]

### V.    DEFENSE SENTENCING REQUEST

Mr. Briere stole about $60,000 which should be replaced as soon as possible. The principal victim is a small business owner who is blameless here, and deserves prompt restitution. Mr. Briere is employable, healthy and smart. He has demonstrated remorse by confessing immediately and pleading guilty promptly. On supervised release, he can find work soon in the fishing, construction or health care fields. Mr. Briere has been in jail for about five months. His guideline range is somewhere between 12 and 21 months, depending on the application of the enhancement.

The defense request is for a six month sentence. That sentence is "sufficient, but not greater than necessary" to address the 3553(a) factors. It has the appropriate advantage of putting Mr .Briere out into the work force in summer, when employment opportunities are greater.

In the alternative, the defense requests a sentence of a year and a day. This sentence would be a substantial sanction in line with guideline calculations and also enable

---

[2] Counsel for Mr. Briere has not been able to locate Ninth Circuit authority about "sophisticated means" relevant to this case. Most of the "sophisticated means" cases concern a different enhancement in the tax context, e.g., United States v. Montano, 250 F.3d 709 (9th Cir. 2001).

prompt restitution. It is the defense position that more than 12 months of actual jail, for the sentencing factors in the statute, is "greater than necessary."

DATED this 31st day of May 2006.

Respectfully submitted,

s/Sue Ellen Tatter
Assistant Federal Defender
550 West 7th Avenue, Suite 1600
Anchorage, AK 99501
Phone:	907-646-3400
Fax:	907-646-3480
E-Mail:	sue_ellen_tatter@fd.org

Certification:
I certify that on May 31, 2006,
a copy of **Defense Sentencing Memorandum** was served electronically on:

Audrey J. Renschen
Assistant United States Attorney
U.S. Attorney's Office
222 West Seventh Avenue #9, Room 253
Anchorage, AK  99513-7567

and a copy was hand delivered to:

Pam Shaw
Probation Officer
U.S. Probation & Pretrial Services
222 W. 7th Avenue, #48, Room 168
Anchorage, AK 99513-7562

s/Sue Ellen Tatter